IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILLIP ROSS and MICHELLE ROSS, | ) |
| Plaintiffs, | ) Civil Action No. 11-1389 |
| | ) |
| vs. | ) Magistrate Judge Maureen P. Kelly |
| | ) |
| BOROUGH OF DORMONT; GINO | ) |
| RIZZA, individually and as Borough | ) |
| Manager; KIM LUSARDI; LAURIE | ) |
| MALKA; EUGENE BARILLA; DREW | ) |
| LEHMAN and HEATHER SCHMIDT, | ) |
| Individually and as Council,  | ) Re: ECF No. 33 |
| Defendants. | ) |

## OPINION

**KELLY, Magistrate Judge**

Plaintiffs, Phillip Ross ("Plaintiff"), the former Chief of Police of the Borough of

Dormont, and his wife, Michelle Ross, brought this lawsuit against Defendants Borough of

Dormont ("the Borough"), Gino Rizza ("Rizza"), individually and as Borough Manager, Kim

Lusardi ("Lusardi"), Laurie Malka ("Malka"), Eugene Barilla ("Barilla"), Drew Lehman

("Lehman"), and Heather Schmidt ("Schmidt") (collectively, "Defendants"),[1] alleging that

Defendants violated Plaintiff's civil rights relative to several *Loudermill* hearings to which

Plaintiff was subjected and his eventual demotion to patrolman.

Presently before the Court is a Motion to Dismiss ("the Motion"), ECF No. 33, submitted

on behalf of Defendants.  For the reasons that follow, the Motion will be granted in part and

denied in part.

---

[1] Although Christopher Gabriel and Campbell Durrant Beatty Palombo & Miller, P.C. were also named as
defendants in this action they have since been dismissed from the case pursuant to Fed. R. Civ. P. 41(a)(1)(A).  See
ECF No. 32.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

According to the Complaint, Plaintiff had been employed by the Borough as a police officer for more than 25 years when he was promoted to the Chief of Police in May of 2009. ECF No. 22, ¶ 9.

On July 27, 2010, Plaintiff received a letter from Defendant Lusardi, the President of Dormont Council ("Council"), informing him that Council had revised the job description for the Chief of Police so as to employ a "working chief" in conformity with Borough Ordinance No. 1420, which had been adopted in 1993.  Plaintiff was directed to include himself on the department's work schedule for 5 shifts per week, and perform regular patrol duties.  Id. at ¶ 11. See ECF No. 22-1.  Plaintiff was also directed to submit a copy of the work schedule to Defendant Rizza in order for Council to verify his compliance with the duties required of him as the Chief of Police.  In addition, Plaintiff was advised that failure to fulfill these requirements would be considered as neglect of official duty and/or disobedience of orders which would result in appropriate disciplinary action.  Id.  Plaintiff alleges that the "working chief " requirement was contrary to past practice.

On August 25, 2010, Plaintiff received another letter from Lusardi advising him that Council  had received a communication from the Borough's Mayor stating that the directive requiring Plaintiff to become a "working chief" constituted an "unreasonable demand" on Plaintiff's time.  ECF No. 22, ¶ 12.  See ECF No. 22-1.  Council consequently ordered Plaintiff to meet with Defendant Rizza on September 1, 2010, to explain what duties put unreasonable demands on his time, and what tasks he performed that interfered with his performing patrol duties; the information provided would then be reviewed by Council.  Id.

In a letter addressed to Plaintiff dated November 17, 2010, Rizza noted that a recent arbitration decision had voided a term of the police contract which required the Borough to have a minimum number of officers per shift as well as a supervisory officer on each shift, and advised Plaintiff that, in accordance with that decision, Council had issued a directive, effective immediately, that no overtime was to be scheduled without his prior approval.  ECF No. 22, ¶ 13.  See ECF No.  22-3.

Although not clear from the Amended Complaint, sometime in the interim, Rizza allegedly called Plaintiff into his office and conducted a *Loudermill* hearing.  ECF No. 22, ¶ 14.  Plaintiff alleges that he was not informed that the meeting would be a *Loudermill* hearing in which he would be disciplined, and that, immediately after the meeting, he was handed a copy of a letter signed by Rizza in which he outlined a series of alleged deficiencies in Plaintiff's performance and indicated that he was recommending to Council that Plaintiff be demoted to the rank of Sergeant.  Id. at ¶¶ 15, 16.  See ECF No. 22-4.  Because the letter was given to Plaintiff immediately following the meeting, he contends that not only had it been prepared prior to the meeting but that the determination to discipline Plaintiff had already been made as well.  ECF No. 22, ¶¶ 17, 18.

Plaintiff alleges that he used vacation time from mid-November 2010 through January 2011, to care for his wife during an illness and that, in January 2011, the purported "personality conflict" between himself and Rizza "came to a head."  Id. at ¶¶ 19-20.  According to Plaintiff, Rizza had other conflicts with the Police Department including allegedly having "withheld evidence from the Police," and conducting his own investigation of an event that occurred in the Borough.  Id. at ¶¶ 21, 22.  Plaintiff also alleges that various Borough employees signed a letter

in which they state their lack of confidence and/or trust in Rizza's ability to manage the Borough and that Rizza had created a "hostile work environment." Id. at ¶¶ 23, 24. See ECF No. 22-5.

Plaintiff further alleges in the Amended Complaint that at a February 2011 executive session, Counsel for the Borough, Christopher Gabriel, "strongly recommend[ed]" that Plaintiff be fired, and "devised a plan to get rid of [Plaintiff]." ECF No. 22, ¶¶ 25, 26.

Plaintiff also contends that he received a letter on February 9, 2011, from Council, directing him to improve certain areas of his performance within 60 days. Id. at ¶ 28. See ECF No. 22-6. Plaintiff was also informed in the letter that Council would monitor his progress over the following two months via reports from Rizza and that if Plaintiff did not exhibit substantial improvement, Council would consider discipline, including suspension, demotion, or termination. Id.

On February 14, 2011, Plaintiff sent an e-mail to Council and Mayor Tom Lloyd in which he addressed each area of concern set forth in Council's February 9th letter. ECF No. 22, ¶¶ 29, 30. See ECF No. 22-7. Plaintiff stated that officers will continue to walk a beat, although it "might not be as often as some would like," and maintained that he had adhered to the Borough's policy on purchase orders over the past several months. Id.

With respect to vehicle maintenance, Plaintiff stated in the e-mail that the issue of the police car cameras had not been brought to his attention earlier, but that he "take[s] responsibility" for it. Id. He further asserted that he and Sgt. Burke had discussed the camera repair issue with Rizza two months earlier, and that Rizza allegedly ordered them not to contact the company to arrange for the repairs stating that he would take care of it. Plaintiff also reported that the cameras were still non-operational as of the date of his e-mail, and that Rizza had not informed him of the status of any arrangements to have them repaired. Id.

With respect to the scheduling issue, Plaintiff stated that he and the Mayor have always scheduled officers so as to provide sufficient manpower to ensure public safety, and asserted that Council was using the above-referenced arbitration decision as authority to "reduce manpower to dangerous levels in the name of saving money."  Id.  Plaintiff allowed that he met with Rizza to discuss scheduling following the arbitration decision, at which time Rizza conveyed that only two officers should be scheduled per shift and that, due to safety concerns, Plaintiff subsequently implemented a schedule where he reduced the daylight shift by one officer, so that three officers could be scheduled for the 3:00-11:00  shift.  Id.

Plaintiff further stated in the e-mail that he had been threatened with discipline on at least three occasions "because I choose to resist the constant interference by the Borough Manager under the name of Council."  Id.  He concluded the e-mail by stating that he will discuss the above issues with the Mayor upon the Mayor's return to work in the next several days.  Id.

On that same date, February 14, 2011, Rizza sent a reply e-mail to Plaintiff.  ECF No. 22, ¶ 31.  See ECF No. 22-8.  Rizza referenced several of the comments allegedly made by Plaintiff during a meeting held on February 11, 2011, including Plaintiff's alleged assertion that the Mayor, not Council, was his "boss;" that Plaintiff "did not care what Council says regarding [his] job duties;" that Council did not have the right to terminate Plaintiff's employment; and that Council's February 9 letter was "bullshit."  Id.  Rizza stated that he would convey this information to Council, along with Plaintiff's alleged stated intention not to comply with the instructions set forth by Council in the February 9th letter.  Rizza also noted that "Council did not ask you to discuss this matter with the Mayor, but instead gave you very specific instructions that it intended for you to follow.  You have made it clear that you have no intention of doing

that, and I will convey that to the Council." Id.[2]  Plaintiff sent another e-mail to Council and the Mayor, apparently in response to Rizza's e-mail, later that same day in which he largely repeats the statements he made in his first e-mail.  ECF No. 22, ¶ 32.  See ECF Nos. 7, 9.

Plaintiff subsequently received an unsigned letter dated February 17, 2011 advising him that Council had learned of his statements that he did not view Council as his "boss" and that he did not intend to follow the directives set forth by Council.  ECF No. 22, ¶¶ 33-34.  See ECF No. 22-10.  The letter also referenced Plaintiff's February 14th e-mail to Council, in which Plaintiff indicated that he viewed Council's attempts to correct his performance deficiencies as "interference" with the Police Department.  Id.  Plaintiff was then directed to attend a *Loudermill* meeting with Rizza on February 18, 2011, "to discuss [Plaintiff's] response to Council's February 9 letter, and related issues."  Id.

Plaintiff alleges in the Amended Complaint that he informed Council that he did not state that "council was not his boss," and that Rizza's assertion that Plaintiff made the statement was "plainly not true."  ECF No. 22, ¶ 34.  Plaintiff claims, however, that Council later shared the allegedly false information with three news outlets which immediately published the false information in news articles.  Id.

According to the Amended Complaint, a *Loudermill* hearing was held on February 18, 2011, which was attended by Chris Gabriel, labor counsel for the Borough, Rizza, and the Borough's Assistant Manager, Ian McMeans.  Id.  Plaintiff alleges that the same issues raised by Council in its letter to Plaintiff dated February 9, 2011, were addressed at the hearing and that Rizza and Messrs. Gabriel and McMeans all recommended that Plaintiff be demoted.  ECF No. 22, ¶ 36.  Plaintiff complains that the hearing was held only nine days after he received Council's

---

[2] Contrary to the copy of Rizza's e-mail which is attached to the Amended Complaint, ECF No. 22-8, Plaintiff alleges in the Amended Complaint that Rizza told Plaintiff that he "was not to discuss the February 9, 2011 with Mayor Lloyd."  ECF No. 22, ¶ 31.

February 9th letter even though the letter stated that he had 60 days to correct any deficiencies, and that he did not have the assistance of a union representative or private counsel.  Id.  He further asserts that Rizza did not have authority to conduct a *Loudermill* hearing, which he claims could only be done by Council, and that Rizza, Mr. Gabriel and Council all conspired to set him up to ensure that he would fail.  Id. at ¶¶ 37, 38.  Nevertheless, Plaintiff also alleges that he stopped the meeting because he "experienced chest pains almost immediately," that he was taken to the hospital by ambulance, and that thereafter he, consequently, thereafter took a leave of absence.  Id. at ¶¶ 40-42.

During his absence, on March 7, 2011, Plaintiff asserts that Council voted to demote him to the position of Sergeant, effective immediately.  Id. at ¶ 43.  See ECF No. 22-11.  In the letter Plaintiff received informing him of the demotion, Plaintiff was advised that he was being demoted was due to his ineffectiveness as a manager and insubordination toward Council.  ECF No. 22, ¶ 44.  See ECF No. 22-11.  The letter specifically referenced the purported deficiencies in Plaintiff's performance as well as the budgetary impact of such deficiencies; Council's attempts to correct his performance; Plaintiff's insubordination to Council's authority in that regard; and his contradictory statements, lack of adequate explanation, and refusal to discuss issues raised at the February 18 *Loudermill* hearing.  Id.

Plaintiff subsequently appealed the demotion to the Borough's Civil Service Commission.  A hearing was held on April 26, 2011, at which time Rizza, Assistant Manager McMeans, and Defendant Lusardi testified on behalf of the Borough.   ECF No. 22, ¶¶ 45-48.  Plaintiff alleges that Lusardi's testimony indicated that each of the directives Council had issued to Plaintiff were being handled appropriately by the "interim chief" following Plaintiff's demotions.  Plaintiff claims that, unbeknownst to Defendant Lusardi, he had been acting as the

interim chief because "he was the most senior sergeant, as reinstated by the Mayor." Id. at ¶¶ 49-51.

Plaintiff further alleges that, in May 2011, Rizza received a parking ticket and subsequently entered the "Police Only" entrance of the Police Department, which he had previously been told not to use, to contest the ticket. Id. at ¶¶ 54-55. Rizza, consequently, was charged with defiant trespass which Plaintiff and Sgt. Burke reported to the Mayor and the District Attorney. Plaintiff alleges that as a result of reporting Rizza's wrongdoing, Sgt. Burke was demoted to patrolman and Plaintiff was "reprimanded and a *Loudermill* hearing was to follow." Id. at ¶¶ 56-58.

Plaintiff also alleges that Mayor Lloyd directed him and Sgt. Zawischa to remove the GPS units from the police vehicles because members of the public had gained access to the GPS system and were able to track the officers positions. Id. at ¶ 59. Plaintiff alleges that he was subsequently reprimanded by Council for following Mayor Lloyd's order. Id. at ¶ 61.

It appears that Plaintiff also received a letter dated June 20, 2011, directing Plaintiff to attend another *Loudermill* hearing which was scheduled for July 7, 2011, in order to address his removal and/or disabling of the GPS units from the police vehicles. Id. at ¶¶62-63. See ECF No. 22-12.[3] Plaintiff was subsequently demoted to patrolman which he contends was also due to his having reported Rizza's wrong doing to the Mayor and the District Attorney. ECF No. 22, ¶¶ 63, 64. It appears that Plaintiff also appealed the demotion to the Civil Service Commission. Id. at ¶ 65. Although a hearing was initially scheduled for August 6, 2011, Plaintiff alleges that it was postponed at the request of the Borough and has not yet been heard. Id. at ¶¶ 71-73.

---

[3] Although Plaintiff alleges in the Amended Complaint that the *Loudermill* hearing was scheduled for July 7, 2011, the letter he received states that it was scheduled for June 22, 2011. ECF No. 22, ¶ 62; ECF No. 22-12.

On July 26, 2011, the Civil Service Commission issued its Findings of Fact and Adjudication regarding Plaintiff's first demotion from Chief of Police to Sergeant finding that the evidence presented at the hearing was "both insufficient . . . and . . . not credible, to sustain the charges brought."  ECF No. 22-13, p. 2; ECF No. 22, ¶¶ 66-68.  The Civil Service Commission ordered that Plaintiff be reinstated to the position of Chief of Police with full back pay.  Id.  The Borough appealed the Commission's ruling to the Court of Common Pleas of Allegheny County, at No. SA-11-756.  ECF No. 22, ¶ 70.[4]

Plaintiff alleges that he has suffered anxiety, nightmares, loss of sleep, heart ailments and depression as a result of Defendants' actions.  Id. at ¶ 75.  Michelle Ross contends that she too has suffered as a result of her husband not being able to enjoy his life.  Id. at ¶ 76.

Plaintiff filed a Complaint on November 1, 2011, ECF No. 1, and an Amended Complaint on March 14, 2012, ECF No. 22, in which Plaintiff brings eleven causes of action against Defendants: violation of his rights under the Due Process Clause of the Fourteenth Amendment (Count I); violation of his civil rights pursuant to 42 U.S.C. § 1983 (Count II); violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.A. § 621, *et seq.* (Count III); "municipal liability" (Count IV); violation of the Pennsylvania Whistleblower Act, 43 P.S. 1421, *et seq.* (Count V); "defamation/libel per se" (Count VI); civil conspiracy (Count VII); wrongful use of civil proceedings (Count VIII); breach of contract (Count IX); loss of consortium (asserted by both Plaintiff and his wife, Michelle Ross) (Count X); and intentional infliction of emotional distress (Count XI).

---

[4] Defendants have attached a copy of the Court of Common Pleas docket sheet as Exhibit A to their Brief in Support of the Motion to Dismiss which reflects that the Borough filed a Praecipe to Discontinue the appeal on January 4, 2012.  ECF No. 34-1.  A copy of the praecipe is also attached as Exhibit B.  ECF No. 34-2.  As requested by Defendants, the Court will take judicial notice of these documents.

Defendants filed a Motion to Dismiss on June 4, 2012, to which Plaintiff responded on July 18, 2012.  ECF Nos. 33, 39.  As such, the Motion is now ripe for review.

## II.      STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff.  Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008).  The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint.  See California Public Employees' Retirement System v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id., citing Papasan v. Allain, 478 U.S. 265, 286 (1986).   Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

## III.    DISCUSSION

In their Motion, Defendants seek dismissal of all eleven Counts brought in the Amended

Complaint as well as Plaintiff's claims for punitive damages.  ECF No. 34.  Plaintiff has

conceded that the claims brought for civil conspiracy at Count VII, wrongful use of process

brought at Count VIII, breach of contract claim brought at Count IX and his claims for punitive

damages are properly dismissed.  ECF No. 39.  The Court will therefore confine its discussion to

the remaining eight Counts.

### A.    Fourteenth Amendment Due Process Claim (Count I)[5]

Plaintiff alleges that Defendants Rizza and the Borough violated his procedural due

process rights provided by the Fourteenth Amendment to the Constitution by not providing him

notice of the *Loudermill* hearings and/or did not provide him with an opportunity to respond to

the charges levied against him.  ECF No. 22, ¶¶ 81-84.

> An essential principle of due process is that a deprivation of life, liberty, or
> property "be preceded by notice and opportunity for hearing appropriate to
> the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339
> U.S. 306, 313 ... (1950).  We have described "the root requirement" of the
> Due Process Clause as being "that an individual be given an opportunity for
> a hearing before he is deprived of any significant property interest." *Boddie
> v. Connecticut*, 401 U.S. 371, 379 ... (1971) (emphasis in original); *see Bell
> v. Burson*, 402 U.S. 535, 542 ... (1971).  This principle requires "some kind
> of a hearing" prior to the discharge of an employee who has a
> constitutionally protected property interest in his employment.  *Board of
> Regents v. Roth*, 408 U.S. [564,] 569-570; *Perry v. Sindermann*, 408 U.S.
> 593, 599 ... (1972).

 Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (footnote omitted).  A

predetermination hearing need not be elaborate or resolve the propriety of the discharge but is

---

[5] Although Defendants argue that any substantive due process claim that Plaintiff purports to bring against them
should be dismissed because Plaintiff has not alleged the deprivation of a property interest to which substantive due
process protection applies, Plaintiff agrees and has asserted in his responsive brief that no such claim has been set
forth in the Amended Complaint.  See ECF No. 39, p. 3.  Thus, the only issue with respect to Count I is whether
Plaintiff has stated a claim for the deprivation of his procedural due process rights.

merely an "initial check" that there are reasonable grounds to believe that the charges against the employee true.  Id. at 545-46.   See McDaniels v. Flick, 59 F.3d 446, 454, 459 (3d Cir. 1995).  Thus, due process is served where the public employee is provided with oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.  Id. at 546.

Here, according to the Amended Complaint there are three *Loudermill* hearings at issue.  Although it is unclear from the Amended Complaint precisely when the first hearing took place, it was apparently sometime after July 25, 2010.  See ECF No. 22, ¶¶ 11, 14.  Plaintiff complains that his rights to due process were violated at that time because he had no notice that the meeting with Rizza was going to be a *Loudermill* hearing and that Rizza handed Plaintiff the letter, in which he was informed of Rizza's intention to recommend to Council that Plaintiff be demoted to Sergeant, immediately following the hearing.  Plaintiff argues that because the letter was clearly prepared prior to the hearing it evidences that Rizza and the Borough were predisposed to discipline him and deprived him of the opportunity to defend himself at the hearing.

The difficulty with Plaintiff's position, however, is two-fold.  First, the United States Court of Appeals for the Third Circuit has held that advance notice of a predetermination hearing is not required and that it is sufficient to be so notified at the beginning of the hearing. McDaniels v. Frick, 50 F.3d at 457.  More importantly, the record shows that that no disciplinary action was taken against Plaintiff following the initial hearing.  Indeed, Plaintiff was not demoted to the rank of Sergeant until March 7, 2011, after the second *Loudermill* hearing had been held.  Because no disciplinary action was taken, no due process was owing in the first instance.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 547-48 ("all the process that is due is provided by a predetermination opportunity to respond, coupled with post-termination

administrative procedures as provided by the [state] statutes"). Plaintiff therefore has failed to state a claim with respect to the first *Loudermill* hearing.

The second *Loudermill* hearing took place on February 18, 2011, following which Plaintiff was demoted to Sergeant; the third hearing was held on June 22, 2011, following which Plaintiff was demoted to patrolman. Plaintiff does not dispute that he received notice of these hearings or that he was given an explanation of the Borough's evidence, but alleges in the Amended Complaint that, because the Borough was predisposed to discipline him, he had no meaningful opportunity to defend himself.

The Court of Appeals for the Third Circuit, however, has held that even where the decision maker at the predetermination stage is biased or the preliminary process is a "sham," due process is not violated as long as review by an impartial decision maker is made available to the employee. McDaniels v. Frick, 50 F.3d at 458-461, *relying on* McKinney v. Pate, 20 F.3d 1550 (11th Cir. 1994) (*en banc*); Walker v. City of Berkeley, 951 F.2d 182 (9th Cir. 1991); Duchesne v. Williams, 849 F.2d 1004 (6th Cir. 1988) (*en banc*); Schaper v. City of Huntsville, 813 F.2d 709 (5th Cir. 1987).

Here, review by the Civil Service Commission was not only made available to Plaintiff but, according to the Amended Complaint, he successfully appealed the first disciplinary action demoting him to Sergeant. ECF No. 22, ¶¶ 45-48, 53, 66-68. The Civil Service Commission issued an Order dated July 26, 2011, dismissing the charges against Plaintiff and directed the Borough to reinstate Plaintiff as the Chief of Police with full back pay. ECF No. 22-13. Because the disciplinary action taken against Plaintiff was subsequently reviewed by an impartial decision maker, Plaintiff received all the process that he was due.

Although Plaintiff also requested review by the Civil Service Commission after the third *Loudermill* hearing, it appears that the hearing, which was originally scheduled for August 6, 2011, was postponed at the request of the Borough.  Id. at ¶¶ 65, 71.  According to the Amended Complaint, a hearing had not yet occurred as of its filing on March 14, 2012.[6]  Thus, it does not appear that Plaintiff's second demotion has been reviewed by an impartial decision maker and his complaints of bias at the predetermination hearing remain uncured.  Under these circumstances, it would appear that Plaintiff has been deprived of the due process protections afforded him by the Fourteenth Amendment and has properly stated a claim at Count I with respect to the third *Loudermill* hearing.

**B.      Section 1983 Claim (Count II)**

At Count II of the Amended Complaint, Plaintiff has brought a claim pursuant to 42 U.S.C. § 1983 ("Section 1983"), which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws.  It does not, by its own terms, create substantive rights."  Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), *citing* Baker v. McCollan, 443 U.S. 137, 145 n. 3 (1979) (footnote omitted).  Thus, in order to state a claim for relief under Section 1983, the plaintiff must allege facts from which it could be inferred that "the defendant, acting under color

---

[6] Moreover, Plaintiff has represented in his brief in opposition to Defendants' Motion, which was filed on July 18, 2012, that a hearing has never been held.  ECF No. 39, p. 5.

of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Id. at 423.

In the instant case, the only right secured by the Constitution or federal law to which Plaintiff specifically refers in the Amended Complaint in support of his Section 1983 claim is the Fourteenth Amendment to the United States Constitution, and appears to suggest that Defendants discriminated against because of his age in violation of the equal protection clause.  ECF No. 22, ¶88.

In order to state a Section 1983 claim for denial of equal protection under the Fourteenth Amendment, a plaintiff must show that he or she received different treatment than other similarly situated individuals and that the disparate treatment was based on his or her protected class status.  Leibert v. Philadelphia Housing Authority, 474 F. App'x 76, 79 (3d Cir. 2012, *citing* Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005).  See Kasper v, Cnty. of Bucks, 2013 WL 563342, at *3 (3d Cir. Feb. 15, 2013).  "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" Startzell v. City of Philadelphia, 533 F.3d 183, 203 (3d Cir. 2008), *quoting* Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).  Moreover, to succeed on a claim brought under Section 1983, plaintiff must prove that the discrimination was purposeful.  Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 268 (3d Cir. 2010); Chamber ex rel. Chambers v. School Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 196 (3d Cir. 2009).

In this case, Plaintiff has not alleged any facts whatsoever relative to his equal protection claim.  Rather, Plaintiff has merely stated that the Borough and Rizza are state actors and were acting under color of state law; that they have jointly and severally violated Plaintiff's rights pursuant to Section 1983 and the Fourteenth Amendment; and that they have "discriminated

against Plaintiff in his terms and conditions of employment due to his age." ECF No. 22, ¶¶ 87-89. These are not facts but rather conclusions and do not raise Plaintiff's claims for relief above the speculative level.

Although Plaintiff later alleges, with respect to his claim brought under the ADEA, that he is age sixty three and, thus, in a protected class and that younger employees in the Borough and the Police Department, *i.e.*, Officers James Briglia, Michael Bisagnani, and Ralph Zawischa, have received favorable treatment, he has offered no facts to support these conclusions either. Plaintiff has not alleged how old the other employees are, how they are similarly situated, when they received favorable treatment, what specific types of favorable treatment they received, under what circumstances, or by whom the treatment was provided. Moreover, even if these facts demonstrated that Defendants treated Plaintiff differently they do not show that Plaintiff was treated differently because of his age.[7] Rather, Plaintiff merely draws that conclusion which invites the Court to speculate that he may have a right to relief. This is clearly insufficient. See Kasper v. Cnty. of Bucks, 2013 WL 563342, at *3.

**C.    ADEA Claim (Count III)**

To establish a *prima facie* case of age discrimination under the ADEA, Plaintiff must demonstrate that: (1) he is at least 40 years old; (2) he suffered an adverse employment decision; (3) he is qualified for the position; and (4) that he was replaced with an employee who is sufficiently younger to permit an inference of age discrimination. Novak v. Posten Taxi Inc., 386 F. App'x 276, 278 (3d Cir. 2010), *citing* Tomasso v. Boeing Co., 445 F.3d 702, 706 n. 4 (3d Cir. 2006). See Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009).

---

[7] Indeed, Plaintiff suggests elsewhere in the Amended Complaint that the animosity between Plaintiff and Rizza amounted to nothing more than a personality conflict and that Rizza generally created a hostile environment for all Borough employees. ECF No. 22, ¶¶ 20, 24, 39. See ECF No. 22-5.

Although it is undisputed that Plaintiff has alleged facts to satisfy the first three elements of a *prima facie* case under the ADEA, Plaintiff has not alleged sufficient facts with respect to the fourth element.  The only allegations in the Amended Complaint that speak to younger employees is that Officers James Briglia, Michael Bisagnani, and Ralph Zawischa, have received favorable treatment and have not been harassed, and that while Zawischa was also involved in removing GPS units from police vehicles (for which Plaintiff was allegedly demoted to patrolman), Zawischa "has received praise and commendation for his work for the Dormont Police Department."  ECF No. 22, ¶¶ 97, 98.

These facts, however, do not establish that Plaintiff was replaced by a sufficiently younger person to permit an inference of age discrimination.  In fact, these facts do not address who replaced Plaintiff as either the Chief of Police or as a Sergeant after he was demoted at all.  See Novak v. Posten Taxi Inc., 386 F. App'x at 278.  Moreover, Plaintiff has failed to plead how old these other officers are, under what circumstances they received favorable treatment, when, or by whom.[8]  Merely stating that they received favorable treatment simply does not permit the inference that Plaintiff was discriminated against because of his age when he was demoted.  Plaintiff, therefore, has failed to state a *prima facie* case of discrimination under the ADEA and Count III of the Amended Complaint is properly dismissed.

### D.    Municipal Liability Claim (Count IV)

It is well settled that a municipality may not be held liable under Section 1983 merely because its employees have acted unconstitutionally.  Rather, a municipality may only be found liable for their own illegal acts or where the plaintiff is able to identify a municipal "policy" or

---

[8] The Court notes that Plaintiff brought a claim under the ADEA in his original Complaint filed with this Court, ECF No. 1, ¶¶ 105-111, which Defendants moved to dismiss arguing that Plaintiff had failed to allege sufficient facts to support the claim.  ECF No. 19, pp. 23-24.  In response, Plaintiff filed the Amended Complaint but fails to add any averments that serve to cure the deficiencies in the original Complaint.

"custom" that caused the constitutional violation.  <u>Commissioners of Bryan County v. Brown</u>,

520 U.S. 397, 403 (1997).  <u>See</u> <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658

(1978); <u>Carswell v. Borough of Homestead</u>, 381 F.3d 235, 244 (3d Cir. 2004).

> Locating a "policy" ensures that a municipality is held liable only
> for those deprivations resulting from the decisions of its duly
> constituted legislative body or of those officials whose acts may
> fairly be said to be those of the municipality. . . . Similarly, an act
> performed pursuant to a "custom" that has not been formally
> approved by an appropriate decisionmaker may fairly subject a
> municipality to liability on the theory that the relevant practice is
> so widespread as to have the force of law.

<u>Commissioners of Bryan County v. Brown</u>, 520 U.S. at 403-04 (citations omitted).

Here, Plaintiff has failed to state a Section 1983 claim against the Borough.  First, as

previously discussed, the only constitutional violation at issue in this case is that revolving

around Plaintiff's due process rights relative to the allegedly partial *Loudermill* hearing that took

place on June 22, 2011.  The Amended Complaint, however, is devoid of any facts that would

suggest that Rizza was acting pursuant to a custom or policy of the Borough in conducting the

*Loudermill* hearing in a biased manner.

In fact, the only mention in the Amended Complaint of a policy or "practice" appears at

paragraphs 90 and, arguably, 102.  Paragraph 90 relates to Plaintiff's claim that he was denied

equal protection because of his age and merely states that: "Defendants employ policies,

practices, and or procedures and/or lack policies, practices, and procedures which led to the

violation of the Constitutional rights of Plaintiff."  ECF No. 22, ¶ 90.  He does not identify a

particular policy or practice and has not alleged any facts to suggest that any practice is so

widespread to have the force of law.  Paragraph 102 is similarly conclusory and devoid of facts

stating only that "[t]he action and/or inaction by the Defendants in hiring, training, supervising,

and disciplining their agents, is part of a larger scheme/pattern/practice" which authorizes and/or permits individuals within the Borough to violate Plaintiff's rights.  Id. at ¶ 102.

Indeed, Plaintiff's entire claim is based on general assertions that the Borough has failed to properly train, supervise, or discipline Rizza, Council and/or its agents which has resulted in constitutional violations.  Id. at ¶¶ 100-104.  The absence of any facts suggesting what training, supervision and disciplinary measures are lacking; how they are insufficient; or how the specific training or supervision or lack thereof resulted in the deprivation of Plaintiff's due process rights is fatal to his claim.

### E.      Pennsylvania Whistleblower Law (Count V)

Under the Pennsylvania Whistleblower Law,

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

43 P.S. § 1423(a).  "Wrongdoing," in turn, is defined as: "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer."  43 P.S. § 1422.  See Golaschevsky v. Dep't of Environmental Protection, 720 A.2d 757, 759 (Pa. 1998).

The facts alleged in the Amended Complaint relative to Plaintiff's claim brought under the Pennsylvania Whistleblower law are that: Plaintiff made a good faith report of wrongdoing to the mayor and the District Attorney regarding Mr. Rizza entering the Police Department through the "Police Only" entrance; that the infraction constitutes the crime of defiant trespass for which

Rizza was cited; that Rizza was aware that he was not supposed to use the Police Only entrance; that the Borough and Rizza were aware that Plaintiff had reported the violation to the Mayor and the District Attorney; and that Plaintiff and Sergeant James Burke, who participated in making the report, were demoted to patrolman shortly after making the report.  ECF No. 22, ¶¶ 109-114.

Defendants argue that this claim should be dismissed because Plaintiff has not alleged sufficient facts to demonstrate that Plaintiff made a "good faith" report of "wrongdoing" within the meaning of the Whistleblower Law, and that the facts are equally insufficient to establish that Plaintiff's subsequent demotion was in any way related to Plaintiff's report.

In response, Plaintiff merely reiterates the allegations in the Amended Complaint that he reported to the appropriate authorities that Rizza committed a crime, which is an "instance of wrongdoing" as defined under the Whistleblower law, and that "Mr. Rizza then sought to punish, through constitutional violations, both Ross and Burke . . . ."  ECF No. 39, p. 11.

The Court notes at the outset that it is not at all convinced that being cited for defiant trespass is the type of conduct contemplated by the Whistleblower Law.  Although it technically falls within the statute's definition of "wrong doing," entering the Police Department through the "Police Only" entrance on one occasion does not implicate the notion of government abuse typically associated with the Whistleblower Law.  See Rankin v. City of Philadelphia, 963 F. Supp. 463, 470 (E.D. Pa. 1997) ("the Whistleblower Law is designed to help promote efficient and ethical government by assuring employees they will not lose their jobs (or otherwise suffer) when they report inefficient, unethical, or illegal government practices).

Further, Plaintiff has not pointed to any facts that would establish a connection between the report and his demotion.  Although Plaintiff fails to allege in the Amended Complaint when he reported Rizza's infraction, it appears that Rizza entered the "Police Only" entrance and

received the citation sometime in May of 2011.  ECF No. 22, ¶¶ 54-57.  Nor is it clear from the Amended Complaint precisely when Plaintiff was demoted to patrolman although Plaintiff alleges that the *Loudermill* hearing that precipitated the demotion took place on July 7, 2011, between six and eight weeks later.  Id. at ¶ 62.  Further, the letter Plaintiff received providing him notice of the hearing states that the meeting, which was to be held before Council, was to address Plaintiff's conduct in directing other officers to disable the Borough's GPS systems in the police cars.  ECF No. 22-12.  While Plaintiff may believe that he was demoted to patrolman because he reported Rizza's offense to the Mayor and the District Attorney, his belief does not substitute for facts showing a correlation between the two events.  As such, Defendants motion in this regard will be granted.

### F.       Defamation/Libel Per Se (Count VI)

In Count VI of the Amended Complaint, Plaintiff alleges that Defendants Rizza and the Borough are liable for defamation for stating "in several letters" that Plaintiff believed that "Council was not his boss."  Plaintiff denies making the statements and, thus, alleges Defendants' representations that he did are false.  ECF No. 22, ¶¶ 34, 117-119.  Plaintiff further contends that "these statements have been made public and have caused embarrassment as well as degrading his good reputation in the community."  Id. at ¶ 121.

A plaintiff pursuing a common law claim for defamation must prove: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion.  Reed v. Pray,

53 A.3d 134, 139-40 (Pa. Commw. 2012), *citing* <u>Balletta v. Spadoni</u>, 47 A.3d 183, 196-97 (Pa.

Commw. 2012).  <u>See</u> <u>In In re Philadelphia Newspapers</u>, 690 F.3d 161, 174-74 (3d Cir. 2012).

Defendants argue that Plaintiff has failed to state a claim because he has not alleged "by

whom, to whom, and in what manner the alleged statements . . . were allegedly 'made public,'"

and that to the extent Plaintiff's claim is based on correspondence among Council members

relating to Plaintiff's performance, they are privileged.  ECF No. 39, p. 26.

Contrary to Defendants' argument, however, Plaintiff has plead in the Amended

Complaint that Rizza told Council that Plaintiff has made the statement that "Council was not his

boss," and that Council later shared the information with news outlets, including the Pittsburgh

Post-Gazette, the Pittsburgh Tribune Review and the Dormont Dispatch which immediately

published the false statements in news articles.  ECF No. 22, ¶ 34.  Because under Federal Rule

of Civil Procedure 8(a), a plaintiff does not have to plead the precise defamatory statement, who

made the statement, or specific instances of publication to state a defamation claim, this Court

finds that these allegations are sufficient to survive a motion to dismiss.  <u>See</u> <u>Knit With v.</u>

<u>Knitting Fever, Inc.</u>, 2009 WL 973492, at *6 (E.D. Pa. April 8, 2009).

Further, it is not clear at this juncture whether Plaintiff's claim against Rizza is based

solely on correspondence to Plaintiff and/or Council members relating to Plaintiff's performance.

It is therefore equally unclear that the communications are privileged.

Plaintiff has also brought a claim for defamation against Defendant Lusardi alleging that

"Lusardi made false statements regarding Chief Ross' performance to local news outlets

including the Pittsburgh Post-Gazette, the Pittsburgh Tribune Review and the Dormont

Dispatch;" that the "false information was published and spread widely among the region;" and

that he has suffered both personally and professionally as a result.  ECF No. 22, ¶¶ 122-23, 125.

Having already found that Plaintiff need not plead the precise defamatory statement, who made the statement or specific instances of publication to state a defamation claim, this Court finds these allegations sufficient to state a claim for defamation against Lusardi.[9]

### G.     Loss of Consortium (Count X)

Defendants argue that Michelle Ross' claim for loss of consortium should be dismissed because it is derivative of the underlying claims asserted by Plaintiff and, because those claims are legally insufficient, Michelle Ross' claim cannot stand.

It is undisputed that a claim for loss of consortium is dependent on the success of the underlying claims of the spouse.  Balletta v. Spadoni, 47 A.2d at 201.  Because the Court has found that Plaintiff has sufficiently stated a claim for violations of his right to due process as provided by the Fourteenth Amendment and claims for defamation, it cannot be said that Michelle Ross is unable to succeed on her claim as well.  Accordingly, Defendants' Motion in this regard will be denied.

### H.     Intentional Infliction of Emotional Distress (Count XI)

To succeed in a cause of action for intentional infliction of emotional distress, Plaintiff must establish that: (1) the defendants' conduct was intentional or reckless, (2) the defendants' conduct was extreme and outrageous, (3) the defendants' conduct caused emotional distress, and (4) the resultant emotional distress was severe.  Mascarini v. Quality Employment Services & Training, 2011 WL 332425, at 9 (M.D. Pa. Jan. 31, 2011), citing Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000).  "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in any civilized society."  Reardon v. Allegheny College, 926

---

[9] This having been said, Plaintiff appears to have conceded that his claim for defamation against the Borough and Rizza and Lusardi in their official capacities are barred under the Political Subdivision Tort Claims Act.  See 42 Pa. C.S. §§ 8541, 8542.  ECF No. 39, p. 13.

A.2d 477, 488 (Pa. Super. 2007), *quoting* <u>Hoy v. Angelone</u>, 720 A.2d 745, 754 (Pa. 1998) (internal citation omitted).  Moreover, for liability to be imposed, there must be "knowledge on part of the actor that severe emotional distress is substantially certain to be produced by his conduct."  <u>Hoffman v. Memorial Osteopathic Hosp.</u>, 492 A.2d 1382, 1386 (Pa. Super. 1985).

Here, Plaintiff has alleged in the Amended Complaint that he has suffered severe emotional and physical distress as the result of Defendants' repeated instances of harassment and discrimination.  ECF No. 22, ¶¶ 153-55.  Although Plaintiff alleges that these instances "*should* be characterized as "extreme and outrageous and going beyond all bounds of decency," the Court disagrees.

As the United States Court of Appeals for the Third Circuit has found, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress."  <u>Cox v. Keystone Carbon Co.</u>, 861 F.2d 390, 395 (3d. Cir.1988), *citing* <u>Rinehimer v. Luzerne County Community College</u>, 539 A.2d 1289, 1305 (Pa. Super. 1988).  Indeed, courts have consistently held that claims based on termination of an employment relationship will not satisfy the outrageous conduct requirement of a claim of intentional infliction of emotional distress even where the employer engaged in a premeditated plan to force an employee to resign by making employment conditions more difficult.  <u>Madreperla v. Williard Co.</u>, 606 F. Supp. 874, 880 (E.D. Pa. 1985).  <u>See</u> <u>Garges v. People's Light & Theater Co.</u>, 2010 WL 4273335, at *5 n. 8 (E.D. Pa. Oct. 29, 2010) (collecting cases).  <u>See</u> <u>also</u> <u>Equal Employment Opportunity Comm'n v. Chestnut Hill Hosp.</u>, 874 F. Supp. 92, 96 (E.D. Pa. 1995) (racial discrimination in employment decision insufficient); <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1487 (3d Cir. 1990) ("as a general rule, sexual harassment alone does not rise to the level of outrageousness necessary to

make out a cause of action for intentional infliction of emotional distress"); <u>Coney v. Pepsi Cola</u>

<u>Bottling Co.</u>, 1997 WL 299434, at *1 (E.D. Pa. May 29, 1997) ("highly provocative racial slurs

and other discriminatory incidents do not amount to actionable outrageous conduct");  <u>Reimer v.</u>

<u>Tien</u>, 514 A.2d 566, 569 (Pa. Super. 1986) *quoting* Restatement (Second) of Torts § 46,

comment (d) (the standard is not satisfied by allegations of "insults, indignities, threats," or other

similar conduct).

In the instant case, although Rizza's alleged conduct could be construed as

unprofessional and even purposeful, the allegations of discrimination and harassment as alleged

in the Amended Complaint simply do not rise to level of conduct so outrageous as to go beyond

all possible bounds of decency intolerable in any civilized society.  As such, Plaintiff's claim for

intentional infliction of emotional distress is properly dismissed.

## IV.    CONCLUSION

For these reasons the following Order is entered:

AND NOW, this 29th day of March, 2012, upon consideration of the Motion to Dismiss

submitted on behalf of Defendants and for the reasons set forth in this Court's Opinion above,

IT IS HEREBY ORDERED that the Motion, ECF No. 33, is granted in part and denied in

part.  The Motion is granted as to Count I of the Amended Complaint, insofar as Plaintiff alleges

he was denied due process with respect to the first two *Loudermill* hearings; as to Counts II, III,

IV, V, VII, VIII, IX, and XI of the Amended Complaint; as to Count VI insofar as Plaintiff seeks

to hold the Borough and Defendants Rizza and Lusardi liable in their official capacities; and as

to any claim for punitive damages asserted by Plaintiff.  The Motion is denied as to Plaintiff's

Fourteenth Amendment due process claim brought at Court I with respect to the third *Loudermill*

hearing held on June 22, 2011; as to Plaintiff's claim brought at Count VI for defamation against

Defendants Rizza and Lusardi in their individual capacities; and as to Michelle Ross' claim for loss of consortium brought at Count X.

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:     All counsel of record by Notice of Electronic Filing